## MURPHY v. ARNSON.

1. "Nitro-benzole," being a manufacture from benzole and nitric acid, and a non-enumerated article, is subject to duty under the twentieth section, known as the similitude clause, of the act of Aug. 30, 1842 (5 Stat. 565), which provides that "on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which any of its component parts may be chargeable," and not under the fifth section of the act of July 14, 1862 (12 id. 548), which imposes a duty of fifty per cent, *ad valorem* on "essential oils not otherwise provided for."

2. Evidence tending to show that a non-enumerated article "resembles essential oil in the uses to which it is put, as a marketable commodity, more than any thing else," falls short of the requisition of the act of Aug. 30, 1842, *supra*, which provides that "on each and every non-enumerated article which bears a similitude in . . . the use to which it may be applied, to any enumerated article chargeable with duty," there shall be levied, collected, and paid "the same rate of duty which is levied and charged on the enumerated article which it most resembles."

ERROR to the Circuit Court of the United States for the Southern District of New York.

In March, 1871, Arnson & Wilzinski, the plaintiffs below, imported into New York a quantity of nitro-benzole, which is obtained by the chemical action of its constituents — benzole and nitric acid — upon each other. It is then refined and cleaned by distillation, and sold as nitro-benzole and as "oil of myrbane" to druggists, soap-manufacturers, "and to the trade generally." The defence introduced testimony that this is a well-known article of commerce, commercially known as oil of myrbane, used for perfuming and flavoring, and also commercially known as "artificial oil of bitter almonds," as well as by its other names; and that, in fact, it resembles essential oil in the uses to which it is put, as a marketable commodity, more than any thing else, and is used as a substitute for an essential oil, being cheaper. Rebutting testimony was put in by the plaintiffs below.

Murphy, the collector, exacted duty upon this nitro-benzole as upon an "essential oil not otherwise provided for," fifty per cent, under the fifth section of the act of July 14, 1862 (12 Stat. 548), whereas the importers contended that it was a non-enumerated article, and that forty cents a gallon was the proper duty, being the highest rate payable on either constituent,

agreeably to the similitude clause of the act of Aug. 30, 1842, sect. 20 (5 Stat. 565).

Upon this evidence the court directed a verdict for the plaintiffs. Judgment having been rendered thereon, the collector brought the case here.

*Mr. Assistant-Attorney-General Smith*, for the plaintiff in error.

*Mr. William Stanley* and *Mr. Stephen G. Clarke*, contra.

MR. JUSTICE HUNT delivered the opinion of the court.

It was an evident error on the part of the collector to tax " nitro-benzole " as an essential oil. There was no evidence that such was its character ; but it appeared at the trial, by uncontradicted evidence, and was in fact conceded, that it was made by mixing benzole and nitric acid ; that these substances combined by reason of their chemical affinity, and nitro-benzole was the result. Not being enumerated as a dutiable article, it falls under the twentieth section of the act of Aug. 30, 1842 (5 Stat. 565), called the similitude clause.

" And be it further enacted, that there shall be levied, collected, and paid, on each and every non-enumerated article which bears a similitude, either in mtaerial, quality, texture, or the use to which it may be applied, to any enumerated article chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned ; and if any non-cnumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied, collected, and paid on such non-enumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest duty ; and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which any of its component parts may be chargeable."

The government now contends that the duty assessed by the collector was the proper one, for the reason that nitro-benzole resembles essential oil in the use to which it is applied, and should be subject to the same duty with that article ; to wit, fifty per cent. There is no pretence that it resembled essential oil in material quality or texture. Although made of two fluids, there is no evidence that the compound resulting bore any

similitude in material quality or texture to either of its original elements, nor is there any thing in the nature of the subject to require us to believe that such was the fact.

The evidence of the use to which it might be applied scarcely warrants us in holding that there was a similitude in that respect. The case states that the defendant gave evidence tending to show that the article "resembles essential oil in the uses to which it is put, as a marketable commodity, more than any thing else." This is all that was shown to make applicable the clause in question, and we think it falls short of the requisition of the statute, that it must "bear a similitude in the use to which it may be applied." It may resemble an essential oil in this respect more than any thing else, and yet bear no resemblance. It does not follow because it resembles nothing else that it resembles essential oil; or because it cannot be applied to any other use, that it may be applied to the use to which essential oil is applied.

Again, it may be doubted whether proof that "the use to which it may be put as a marketable commodity" resembles essential oil meets the meaning of the provision, "bears a similitude in the use to which it may be applied." The former carries the idea of its adaptability to sale as a substitute for essential oil, while the statute plainly refers to its employment, or its effect in producing results.

But the compound falls plainly within the words of the last clause of the act we have cited; to wit, "and on all articles manufactured from two or more materials the duty shall be assessed at the highest rates at which any of its component parts may be chargeable."

We see no more reason to doubt that nitro-benzole is a manufacture of or from benzole and nitric acid, than that glass is a manufacture from sand and fixed alkalies. This is in harmony with the decision in *Meyer et al.* v. *Arthur* (91 U. S. 570), where it was held that the expression, "manufactures of metals of which either of them is the component part of chief value," did not embrace a case where the metals had lost their form and character as metals, and become the chemical ingredients of new forms. White lead, nitrate of lead, oxide of zinc, and dry and orange mineral, were held not to be manufactures of metals

within the words of the statute. Mr. Justice Bradley says: "When the act speaks of 'manufactures of metals,' it obviously refers to manufactured articles in which metals form a component part. When we speak of manufactures of wood, of leather, or of iron, we refer to articles that have those substances especially for their component parts, and not to articles in which they have lost their form entirely, and have become the chemical ingredients of new forms. The qualification which is added to the phrase 'manufactures of metals' — namely, 'manufactures of metals of which either of them' (that is, either of the *metals*) 'is the component part of chief value' — corroborates this view."

In the present case, the original elements are fluids, and the manipulation and the materials blending with each form a union, which is as much a manufacture within the meaning of the statute as where the materials are mechanically joined together. Bouvier thus defines the word "manufacture:" —

"The word is used in the English and American patent laws. It includes machinery which is to be used and is not the object of sale, and substances (such, for example, as medicines) formed by chemical processes when the vendible substance is the thing produced, and that which operates preserves no permanent form." "It includes any new combination of old materials constituting a new result or production, in the form of a vendible article, not being machinery. The contriver of a new commodity which is not properly a machine or a composition of matter can obtain a patent therefor as for a new manufacture. And, although it might properly be regarded as a machine or a composition of matter, yet if the claim to novelty rests on neither of these grounds, and if it constitutes an essentially new merchantable commodity, it may be patented as a new manufacture."

The various nostrums vended all over the land, with or without the certificate of the Patent Office, are manufactures. Beer may well be said to be manufactured from malt and other ingredients, whiskey from corn, or cider from apples. The fact that the identity of the original article or articles is lost, and that a new form or a new character is assumed, is not material in determining whether, within the popular idea, as embodied in the customs act, the article in question is a manufacture from its original elements.

We have no doubt that nitro-benzole is a manufacture from benzole and nitric acid, falling within the twentieth section of the act of 1842, and that the duty was rightly fixed by the court below.

*Judgment affirmed.*