Argued June 19, affirmed July 3, 1917.

## STATE *v.* MARASTONI.*

(165 Pac. 1177.)

Intoxicating Liquors—Prohibition Statute—Construction—"Manufacture."

1. One who presses juice from grapes, puts it in a vat and permits it to ferment by natural process with intent to use part of it in the state as a beverage for himself and family, manufactures wine in violation of Gen. Laws, 1915, page 150.

[As to burden of proof of right to sell in prosecution for illegal sale of intoxicating liquors, see note in Ann. Cas. 1913C, 626.]

Intoxicating Liquors—Prohibition Statute—"Manufacture."

2. Where "manufacture," as used in Gen. Laws 1915, page 151, Section 5, means to make, irrespective of quantity produced or use to which it is to be put.

Constitutional Law—Intoxicating Liquors—Prohibiting Manufacture—Constitutionality.

3. Article I, Section 36, of the Constitution, as amended (see Laws 1915, page 12), forbidding the manufacture of intoxicating wine for the maker's own use, does not violate the Fourteenth Amendment of the U. S. Constitution.

---

*On power to prohibit or restrict one's using intoxicating liquors, or having the same in his possession for his own use, see notes in 24 L. R. A. (N. S.) 173; L. R. A. 1915D, 172.        REPORTER.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Joe Marastoni was convicted and fined by the municipal court of the City of Portland for violating the law relating to the manufacture of intoxicating liquors and appealed. Affirmed.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

The defendant was complained against in the municipal court of the City of Portland for a violation of Chapter 141 of the General Laws of 1915, relating to the manufacture of intoxicating liquor. The complaint is as follows:

"The said Joe Marastoni, on the 27th day of September, A. D. 1916, in the county of Multnomah and state of Oregon, then and there being, did then and there unlawfully and wilfully keep and maintain as a common nuisance that certain place known and described as 344 Second Street, in the city of Portland, in the county and state aforesaid, by then and there at said place manufacturing and keeping for sale, barter, and delivery, in violation of law, certain intoxicating liquors, to wit, wine, and by then and there keeping and using in said place certain intoxicating liquors, bottles, kegs, barrels, syphons, and other vessels containing intoxicating liquors, and other property, for the purpose of keeping and maintaining said place above described as a common nuisance, contrary to the statutes in such case made and provided, and against the peace and dignity of the state of Oregon."

That portion of the Constitution bearing upon the matters here discussed is Article I, Section 36, in effect January 1, 1916, and is as follows:

"From and after January 1, 1916, no intoxicating liquors shall be manufactured, or sold, within this state, except for medicinal purposes upon prescrip-

tion of a licensed physician, or for scientific, sacramental or mechanical purposes. * * ''

The statute of 1915 so far as it relates to this subject is as follows:

''Section 1. This entire act shall be deemed an exercise of the police powers of the state for the protection of the public health, peace, and morals, and all of its provisions shall be liberally construed for the attainment of that purpose. Section 2. The words 'intoxicating liquor,' as used in this act shall be construed to embrace all spirituous, malt, vinous, fermented, or other intoxicating liquors; and all mixtures or preparations reasonably likely or intended to be used as a beverage, which shall contain in excess of one half of one per centum of alcohol by volume, shall be deemed to be embraced within such term, independently of any other test of their intoxicating character; and all mixtures, compounds or preparations, whether liquid or not, which are intended, when mixed with water or otherwise, to produce, by fermentation or otherwise, an intoxicating liquor, shall also be deemed to be embraced within such term.''

That part of Section 6 relating to the manufacture of intoxicating liquor provides:

''The provisions of this act shall not be construed to prevent anyone from manufacturing, for his own use, unfermented wine or non-intoxicating cider, or wine for sacramental purposes, or to prevent the manufacture, from fruit grown exclusively within the state, of vinegar or non-intoxicating cider for use and sale, or to prevent the sale at wholesale only to druggists of ethyl alcohol for medicinal, pharmaceutical, scientific, and mechanical purposes, and for external use and application.'' Section 15 prescribes: ''All premises, buildings, vehicles, boats, and all other places where intoxicating liquors are manufactured, sold, bartered or given away, in violation of law, or where persons are permitted to resort for the drinking of intoxicating liquor as a beverage, or where in-

toxicating liquors are kept for sale, barter, or delivery, in violation of law, and all intoxicating liquors, bottles, glasses, kegs, pumps, bars, and other property kept in and used in maintaining such premises, buildings, vehicles, boats, or other places, are hereby declared to be common nuisances; *provided,* that nothing in this act shall be construed to interfere with the rights of seagoing vessels to keep liquor thereon, provided they comply with all the provisions of this act; and every person who maintains or assists in maintaining such common nuisance shall be held guilty of a misdemeanor, and upon conviction shall be punished for each offense as provided in section 36 hereof for offenses under this act.''

The defendant was convicted in the municipal court and appealed to the Circuit Court. The case was there tried before the court without a jury upon a stipulated state of facts, which stipulation we quote:

''That Joe Marastoni, the defendant above named, in the county of Multnomah, and state of Oregon, on or about the 21st day of September, 1916, had in his possession at his private dwelling house located at 344 Second Street, Portland, said county and state, about one third of a ton of grapes, which he then and there crushed, and from which he squeezed the juice into a container, thereby making for his own personal use and for the use of his family, fifty gallons of wine, containing at the said time less than one half of one per centum of alcohol by volume; that thereafter, no act or thing was done by the said defendant, and the said wine was allowed to remain in said container to ferment, and the same did, by the natural process of nature alone, on the 27th day of September, 1916, become fermented wine containing in excess of one half of one per centum of alcohol by volume, and on said date was in the possession of the said defendant in the County of Multnomah and state of Oregon, who was then and there keeping the same for the following purposes: The greater portion thereof was to be used by the defendant and his fam-

ily as a beverage and as a food with their meals as a part thereof, and for culinary purposes, and was not manufactured or kept for the purpose of sale, barter, or delivery. The remaining portion of the same was to be allowed to become vinegar by the further process of nature, and to be used by the defendant and his family for culinary purposes and table use, and not as a beverage."

The court upon these facts adjudged the defendant guilty and imposed a fine of $50, from which judgment he appeals.                                    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Albert B. Ferrera* and *Mr. Joseph H. Page.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. Charles C. Hindman,* Deputy District Attorney, with an oral argument by *Mr. Hindman.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. The principal question is this case is whether the defendant "manufactured" the wine which he kept on the premises. That he pressed the juice from the grapes, put it in a vat, and permitted it to ferment by the usual natural process, with the intent to use part of it in that state as a beverage for himself and family, is admitted. As to this portion of the liquid we are of the opinion that he is guilty of a violaton of the statute. Webster's Dictionary defines the word "manufacture" to mean, "To make (wares, machinery, or other products) by hand, by machinery, or by other agency." In *Murphy* v. *Arnson,* 96 U. S. 131 (24 L. Ed. 773), it is observed:

"Beer may well be said to be manufactured from malt and other ingredients, whiskey from corn, or

cider from apples. The fact that the identity of the original article or articles is lost, and that a new form of a new character is assumed, is not material in determining whether, within the popular idea, as embodied in the customs acts, the article in question is a manufacture from its original elements.''

2. We are of the opinion that the word ''manufacture'' as used in Section 5 of the act referred to means to ''make'' irrespective of the quantity produced, or the use to which it is to be put. This is made clear by Section 6, which provides that the provisions of the act shall not be construed to prevent anyone from manufacturing for his own use unfermented wine or nonintoxicating cider, wine for sacramental purposes, or to prevent the manufacture of vinegar or nonintoxicating cider for sale. In this case the exception proves the rule as to those things not excepted. Section 5 is general and applies to all intoxicating liquors. Section 6, out of caution, excepts wine manufactured for sacramental purposes and unfermented wine manufactured for the use of the maker, and the framer aware of the fact that cider or grape juice must become intoxicating in the process of becoming vinegar permits these processes to be carried on until the vinous fermentation has passed and the acetous fermentation has begun. The section last referred to makes plain the sense in which the word ''manufacture'' is employed in the act. It permits the ''manufacture'' of unfermented wines and wine for sacramental purposes, which indicates clearly that that term is used as a synonym for ''make.''

It is claimed that because the defendant did no affirmative act to produce fermentation, but simply put the grape juice into a vat and ''let nature take its course,'' he did not manufacture the wine; but this

contention is unsound.   Under such a construction no wine ever has been or ever will be made by human agency.   The stipulation admits, in substance, that defendant placed the juice in the vat and there allowed it to ferment, and that his intent was to use the greater portion as a beverage for himself and family as food with their meals and to allow the remainder to become vinegar.   He but pursued the usual process of making wine.   The well-known action of the air and the germs therefrom which produce fermentation were utilized and intended to be ultilized in the process of manufacture.   Some of the most important compounds known to commerce and medicine are manufactured by bringing two or more substances in contact and allowing the chemical forces of nature to produce a new compound or substance: *Murphy* v. *Arnson,* 96 U. S. 131 (24 L. Ed. 773).

3. It is also claimed that if Section 36, Article I, of our Constitution should be construed so as to prevent the manufacture of intoxicating wine for the maker's own use, it is violative of the 14th amendment to the national Constitution.   This contention is not new and is disposed of in *Mugler* v. *Kansas,* 123 U. S. 653 (31 L. Ed. 205, 8 Sup. Ct. Rep. 273), wherein Mr. Justice HARLAN, speaking of the attitude of the courts toward legislation of this character observes:

"If, therefore, a state deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors for other than medical, scientific, and manufacturing purposes, to be necessary to the peace and security of society, the courts cannot, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives.   They have nothing to do with the mere policy of legislation.   Indeed, it is a fundamental principle in our institutions, indispensable to the

preservation of public liberty, that one of the separate departments of government shall not usurp powers committed by the constitution to another department. And so, if, in the judgment of the legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the courts upon their views as to what is best and safest for the community, to disregard the legislative determination of that question. So far from such a regulation having no relation to the general end sought to be accomplished, the entire scheme of prohibition, as embodied in the constitution and laws of Kansas, might fail, if the right of each citizen to manufacture intoxicating liquors for his own use as a beverage were recognized. Such a right does not inhere in citizenship. Nor can it be said that government interferes with or impairs any one's constitutional rights of liberty or of property, when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are, or may become, hurtful to society, and constitute, therefore, a business in which no one may lawfully engage. Those rights are best secured, in our government, by the observance, upon the part of all, of such regulations as are established by competent authority to promote the common good. No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare.''

No doubt, to many of our citizens accustomed to the use of wine as a table beverage to the same extent that others have used tea or coffee or milk, such extreme legislation may seem drastic and harsh. It certainly seems so to the writer, but whatever may be our individual opinions they must yield to the mandates of the law.

The question is not as to the policy of the law, but as to the power to enact it, and this being found to exist the judgment will be affirmed.      AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE McCAMANT concur.