MEYER & LANGE *v.* UNITED STATES (No. 3272)[1]

United States Court of Customs and Patent Appeals, April 29, 1930

*Allan R. Brown* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

[1] T. D. 44043.

80

[Oral argument February 13, 1930. by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court affirming the decision of · the collector holding that "soup squares composed of lentil, pea, rice, barley, potato, oxtail, etc., with a mixture of flour, fat, salt, seasoning, and meat extract," are dutiable under paragraph 773 of the Tariff Act of 1922 at 35 per centum ad valorem. Appellant claimed the merchandise to be dutiable as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1459 of said act.

The competing paragraphs read as follows:

PAR. 773. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; sauces of all kinds, not specially provided for; soya beans, prepared or preserved in any manner; bean stick, miso, bean cake, and similar products, not specially provided for; soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, 35 per centum ad valorem.

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Upon the trial of the case the record in protest 961112, Abstract 47638, under the Tariff Act of 1913, was incorporated, and it was stipulated that the merchandise involved in said protest was the same as the merchandise involved herein. At the trial the protest involved herein was limited to the merchandise described on the invoices as "soup squares" and as "pea soup rolls."

The only testimony in the case is that contained in the incorporated record of protest 961112, and it gives us very little aid. The proportion of ingredients is not shown, nor the method of manufacture.

The merchandise is designated "mushroom," "green pea," "lentils," "rice," etc., and "pea soup in rolls." Exhibits of the merchandise in evidence show that it is put up in packages and labeled "Knorr's Marrow Pea Soup with Bacon," "Knorr's Soup Bean," "Mushroom," "Pea Green," "Pea Yellow."

It is admitted that the ingredients of the merchandise are, in addition to vegetable matter, fat, salt, seasoning, and meat extract.

Appellant contends that the only vegetable substance used in the merchandise is in the form of vegetable flour, and we think the testimony warrants that conclusion.

In the case which was incorporated in the record in the case at bar the Customs Court, then the Board of General Appraisers, sus-

tained the protest, holding that the merchandise was not prepared vegetables, as contended by the Government, but a nonenumerated article, as contended for by the importer.

In the case at bar, the Customs Court first sustained the protest, following its decision in protest 961112, holding the merchandise to be a nonenumerated article and dutiable under paragraph 1459. Upon motion, a rehearing was granted. Upon such rehearing the Customs Court overruled the protest upon the ground that the provision for "soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for," did not appear in the Tariff Act of 1913, under which protest 961112 was decided, and that the merchandise was properly classified under paragraph 773. The court in its opinion said:

The term "forms," in our judgment, would not be applied to what is termed "soups." If the term "soups" means anything in this paragraph, it means what are known as soup squares, similar in shape or consistency to "pastes, balls, puddings, hash," etc.

The Government relies upon the case of *Anderson* v. *United States*, 6 Ct. Cust. Appls. 108, T. D. 35344, wherein it was held that a commodity described as "Maggi's desiccated soup in tablets" was dutiable under paragraph 252 of the Tariff Act of 1909, which paragraph reads as follows:

Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way; any of the foregoing not specially provided for in this section, and bean stick or bean cake, miso, and similar products, forty per centum ad valorem.

The court held that whether or not the term "vegetables prepared in any way" was broad enough to cover the importation, it was clear that the product there involved was so similar to bean stick that it fell within the latter provision of the paragraph. The Government contends that this decision governs the case at bar, and invokes the rule of *stare decisis*. The difficulty with this contention is that the court found in the *Anderson* case that the substance of which the tablets there involved were composed was wholly vegetable, while in the case at bar we have a substance composed of vegetables, salt, fat, and meat extract.

We hold that paragraph 773, except where otherwise specified therein, relates only to vegetables, and not to any commodity composed in part of vegetables and in part of other substances such as meat extract.

The case of *Lang* v. *United States*, 4 Ct. Cust. Appls. 129, T. D. 33394, involved the classification of so-called bouillon cubes under the Tariff Act of 1909. The cubes were made of extract of vegetables

with a trace of meat extract sufficient for bases. The merchandise was held dutiable as a nonenumerated manufacture under paragraph 480 of said act.

We see no escape from the conclusion that because of the presence of the meat extract and fat in the merchandise it is not classifiable either as "vegetables prepared in any way," or, by similitude, as associated with and similar to "bean stick, miso, bean cake, and similar products."

This leaves for consideration the provision in said paragraph 773 reading: "soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both." It is by virtue of this provision that the Customs Court overruled the protest.

We are of the opinion that this provision is not applicable to the merchandise in question for the reason that it is not composed wholly of vegetables, nor of vegetables and meat or fish, or both. Meat extract is not meat, and therefore the provision does not describe the merchandise here in issue.

Neither can the merchandise be brought within the paragraph by similitude. In *Lang* v. *United States, supra*, this court said:

That "vegetables * * * prepared," as used in the tariff laws, finds no comparable degrees of similitude with a meat *extract* and by a parity of reasoning with a vegetable *extract* we think well within the distinguishing differences pointed out by the board in G. A. 5361 (T. D. 24513), cited with approval in *Fujiyama* v. *United States* (T. D. 30573) by the United States District Court for the Territory of Hawaii, wherein it is stated:

Without undertaking to precisely define the limits of the phrase "vegetables prepared or preserved" in said paragraph 241, we believe that it is intended to cover vegetables which have been subjected to limited processes in preparing them for consumption, of which we might cite such illustrations as canned corn, tomatoes, peas, etc. We are convinced that the provision does not include articles in which the manufacturing process has advanced so far that the identity of the vegetable is practically lost, as in the goods under consideration. It would be a somewhat violent construction, for example, to classify a cake baked from meal produced by grinding corn as a prepared vegetable on the ground that it was prepared corn. Note *In re Cundill*, G. A. 5228 (T. D. 24053).

We think the contention and conclusion that there is a similitude to extract of meat may be dismissed by the suggestion that there is no substantial proof in this record of any substantial portion of meat extract in the article. The proof is that vegetable extract predominates to the approximate exclusion of all other ingredients save for flavoring.

Obviously there can be no similitude of quality or texture between such a liquid extract and a vegetable or other solid.

As to use, the record shows this article to be used for the making of soup. It is a material unfit no doubt as imported for food, but a material for making food. A vegetable food is something "eaten cooked or raw," as was said in *Nix* v. *Hedden, supra*. There is a difference in use between materials for food and food.

Upon this point we agree with the views of the board expressed in G. A. 7302 (T. D. 32030), where the same point was at issue, claiming marmite, which is of a vegetable combination, used for making soups, dutiable by similitude as a meat extract. The board very cogently and aptly stated:

The courts, in passing upon the question of similitude as respects similarity in the uses of articles, have stated that such similarity refers to the employment or mode of use or its effect in producing results. *Murphy* v. *Arnson* (96 U. S. 132); *Pickhardt* v. *Merritt* (132 U. S. 252, 258). In other words, two articles are not similar in use within the meaning of the statute because both may be used for food purposes, any more than all medicinal preparations may be said to be similar to one another because they are used for medicine. While beneficial results are sought to be obtained from the use of extract of beef and of the commodity here in question, it is not shown, neither do we think it can be said, that they are claimed to be similar in their effect upon the system or in the results which they produce. It is reasonable to assume that the result produced by the use of extract of beef is entirely different from that sought by the users of marmite, and apparently the reason for avoiding one would lead to the use of the other. Hence we do not think any similarity which may exist between the two is such similarity as is provided for in the statute. As above stated, we are satisfied that marmite is a manufactured article and should be assessed as such.

Because the merchandise in question is composed of a vegetable substance and meat extract and fat, we hold that paragraph 773 is not applicable, and it is dutiable as claimed by appellee as a non-enumerated article under paragraph 1459.

If the record in this case showed that the meat extract, fat, etc., were only a negligible part of the article, used for flavoring, we might reach a different conclusion.

The judgment of the Customs Court is *reversed* and the cause *remanded* for further proceedings not inconsistent with the views herein expressed.

DISSENTING OPINION

GRAHAM, Presiding Judge: I am unable to agree to the conclusion reached by the majority in this case, for reasons which I shall briefly state.

The material involved is what is known as soup squares. On the hearing, it was stipulated by counsel that the merchandise is the same as that which was before the Board of General Appraisers in protest 961112, and, without objection, the record in that case was introduced in evidence *in toto*. In said record appears the appraiser's advisory report in which he thus describes the merchandise:

Erbewurste (pea soup in rolls), and as soup squares, and consists of an article similar to sausage rolls and bouillon cubes composed mainly of lentil flour, fat, salt, seasoning, and meat extract, but not meat.

On the hearing in said incorporated record, one witness was called and examined—Charles J. Steyer. He introduced samples of the importation, and made the following statements in his examination:

Q. Have you yourself used articles like these exhibits?—A. Yes, sir.

Q. Have you seen them prepared for use?—A. I have prepared them myself.

Q. What is the method of their preparation?—A. Why, you just break up the contents, just as a meal or flour, add hot water, and just cook it for a few minutes to increase the flavor, and then serve.

Q. And the result is, what?—A. Soup.

By Judge WAITE:

Q. Is it seasoned or do you season it?—A. It has been seasoned by the manufacturer.

By Mr. KLINGAMAN:

Q. Are you familiar with bouillon cubes?—A. Yes.

Q. Are they used in the same way?—A. The same manner.

Judge WAITE. No meat in these, I understand?

WITNESS. There is no meat at all, only meat extracts.

From this testimony it appears that the use of the soup squares in question is, if not identical, very similar to the use of the various products named in the following clause of paragraph 773:

PAR. 773. * * * soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, * * *.

The question in my mind is, if the soup squares in question here must be said to contain no meat, and as to that I do not find it necessary to express an opinion, Are the articles of importation not properly classifiable by similitude under paragraph 773 rather than as not enumerated manufactured articles under paragraph 1459? In this connection two rules are well established: First, that similitude is a question of fact and must be established; second, if there is a substantial similitude, either in material, quality, texture, or use, to an article or product enumerated in any paragraph of the dutiable list, then the imported article shall be classified under said paragraph rather than as a not enumerated manufactured article. *Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T. D. 40960; *American Smelting & Refining Co.* v. *United States*, 16 Ct. Cust. Appls. 46, T. D. 42718.

The fact of similitude, in my opinion, has been established by the testimony of the witness. Steyer, above quoted. There being a proved similitude of material and use of the imported material to the various articles named in the quoted portion of paragraph 773, is there any reason why this product should not be classified under said paragraph 773, either in reason or based upon any of the prior adjudications on this subject?

The majority opinion cites and relies upon *Lang* v. *United States*, 4 Ct. Cust. Appls. 129, T. D. 33394, as authority in support of the proposition that the articles before us can not be classified by similitude under paragraph 773. I do not so read the case. The articles involved there were bouillon cubes made of extract of vegetables, with traces of extract of meat sufficient for bases. The Board of General Appraisers had held the material dutiable by similitude to "extract of meat" under paragraphs 481 and 287 of the Tariff Act of August 5, 1909. This court held that there must be a substantial similitude to the article in question to warrant classification thereby.

In view of the presence of meat extract in the preparation, the court held there was no substantial similitude with the provision of paragraphs 481 and 252 of said act, as "vegetables * * * prepared in any way." The court also held there was no similitude between prepared vegetables and vegetable extract. In this connection, however, it will be remembered there was no evidence showing any similarity of use in the record. Again, the court there held there was no similitude between the product and extract of meat because what proof there was demonstrated that the element of chief value in the preparation was vegetable extract.

In the authority cited in said *Lang* v. *United States*, namely, T. D. 32030, where the similitude of extract of beef and marmite was involved, the court arrived at its conclusion on the theory that the results produced by the use of these products were entirely different, and hence there was no real similitude.

There is nothing in the authority cited, in my judgment, which has any decided weight in the case at bar. The *Lang* case was decided under the act of August 5, 1909, under an entirely different provision from that which we have before us now. As a matter of fact, as alluded to by the Assistant Attorney General in his brief filed herein, the Congress, in enacting the Tariff Act of 1922, added considerable language to this provision in the statute. The extension of the paragraph is well stated by the Assistant Attorney General in the following excerpt from his brief:

When considering the history relating to the vegetable paragraphs, as above set forth, and realizing that according to the suggestions made before the Tariff Commission, paragraph 200, of the Tariff Act of 1913, was so enlarged by the enactment of paragraph 773, of the Tariff Act of 1922, as to include vegetables "*prepared* or preserved *in any other way* and not specially provided for; sauces of all kinds, not specially provided for; soya beans, prepared or preserved in any manner," and again reenacting that part of paragraph 200 which relates to "bean stick," "miso," "bean cake," and "similar products," and following the past provision by "*soups, pastes, balls, puddings, hash, and all similar forms, composed of vegetables and meat or fish, or both, not specially provided for,*" * * * (*Italics ours*), it is believed, it requires no great argument to convince an unbiased mind that it was the express intention of Congress to include all "*soups*" or "*vegetables prepared in any* * * * *way*" intended for soups, such as miso, and other prepared vegetables, like the articles involved herein, which are intended to be used for soups and sold in the market as "soup."

I am unable to understand why the articles now before us, being composed of prepared vegetables, fats, and meat extract, and used exactly as are the articles named in this additional provision inserted in the Tariff Act of 1922, should not be classified there by similitude, if not therein specifically enumerated. Certainly they are "all similar forms," and whether they may be said to contain meat or not they have a similarity of use and material which, beyond all question, ought to relegate them by similitude to said paragraph 773.

The case of *Anderson & Co.* v. *United States*, 6 Ct. Cust. Appls. 108, T. D. 35344, is cited by counsel for the Government. In that case, articles known as "Maggi's desiccated soup in tablets" were imported. These tablets were shown to be wholly made of vegetable substances. There the question was raised whether the articles of importation, being vegetables compressed into the form of tablets, were a product similar to bean stick, bean cake, or miso, the latter products being composed of beans ground into various forms, and the identity of the beans having been lost in the process. The paragraph in question in that case, namely, paragraph 252 of the Tariff Act of August 5, 1909, provided for:

> Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way; any of the foregoing not specially provided for in this section, and bean stick or bean cake, miso, and similar products, forty per centum ad valorem.

The court held that the use of the imported article being the same as that of the articles named in said paragraph 252, namely, in the preparation of soup, force should be given to the words "and similar products" to the extent of including the imported articles therein.

This case might well be held to be authority for the direct inclusion of the articles of importation here within the language, "and similar products," in said paragraph 773. In any event, I am convinced it should be there classified, at least by similitude, and that the judgment of the court below should be affirmed.

Bland, Judge: I concur in the conclusion reached by Judge Graham in his dissenting opinion that the merchandise involved should be classified under paragraph 773 by similitude.