** Summary ** GRAIN ELEVATOR OPERATION IS INDUSTRIAL AND MANUFACTURING ENTERPRISE A grain elevator operation, involving the receiving, drying, blending, conditioning and reshipment of wheat, soybeans, and milo comes within the definition of an "industrial and manufacturing enterprise" as defined in 74 O.S. 853 [74-853](f) (1971). The Attorney General has considered your request for an opinion wherein you ask in your letter dated January 24, 1972, the following question: "Does a grain elevator operation, involving the receiving, drying, blending, conditioning and reshipment of wheat, soybeans and milo (as described in Mr. Pearson's accompanying letter) come within the definition of an 'industrial and manufacturing enterprise' as defined in Sec. 853 (f), Title 74 of the Oklahoma Statutes?" You attached the letter of John Pearson dated January 22, 1972 which describes the activities of the grain elevator operation as "the receiving, drying, blending, conditioning and reshipment of wheat, soybeans and milo. . . " In answering this question, it is first necessary to determine the purpose of this particular Act (Title 74 O.S. 851 [74-851] — 878). The purpose is set out specifically in one section and alluded to in other sections. Section 74 O.S. 852 [74-852] states: "It is hereby declared to be the purpose of this Act to vitalize the constitutional amendment identified as House Joint Resolution No. 513 of the Twenty-seventh Oklahoma Legislature, if, as and when the same shall be approved by the people, to aid and assist with Oklahoma's industrial development and provide additional employment and payrolls within this State." (Emphasis added) 74 O.S. 853 [74-853](d) states: "The term 'industrial development agency' shall mean any Oklahoma incorporated organization, foundation, association or agency, regardless of the particular name, whether organized for profit or nonprofit, which shall have as its primary function the promotion, encouragement and development of industrial and manufacturing enterprises in Oklahoma." (Emphasis added) 74 O.S. 855 [74-855](a) states: "To cooperate with industrial development agencies in their efforts to promote the expansion of industrial and manufacturing activities in the State." (Emphasis added) Section 74 O.S. 862 [74-862](B) states in part: "It is hereby declared to be the intention of the Legislature that the Oklahoma Industrial Finance Authority created by this Act shall work in closest cooperation with the State Department of Commerce and Industry, looking to Oklahoma's industrial development. . ." (Emphasis added) Thus, it is obvious from these sections that the primary purpose and intent of the act is to promote industrial and business activity, thereby increasing payrolls and employment opportunities, all to the end of advancing economic growth in Oklahoma. There is no doubt that a grain processing facility on the Arkansas River Navigation Project which would create employment opportunities, provide for sale of Oklahoma grains and agricultural products to foreign markets, and increased income for Oklahoma citizens would spur economic activity, and therefore come within the purposes and intent of the Act. It is necessary next to determine whether or not a grain elevator operation is an "industrial or manufacturing enterprise." Black's Law Dictionary, 917 (4th Ed. 1951) defines industry as follows: "Any department or branch of art, occupation, or business conducted as a means of livelihood or for profit; especially, one which employs much labor and capital and is a distinct branch of trade." Black's Law Dictionary, 1117 (4th Ed. 1951) defines manufacture as follows: "The process or operation of making wares or any material produced by hand, by machinery or by other agency; anything made from raw materials by the hand, by machinery or by art. The production of articles for use from raw or prepared materials by giving such materials new forms, qualities, properties or combinations, whether by hand labor or machine. Cains Coffee Company v. City of Muskogee,171 Okl. 635, 44 P.2d 50, 52." The Cains Coffee case, mentioned above, states on page 52: "The undisputed evidence disclosed that plaintiff Cains Coffee Company does not maintain a place of business within the City of Muskogee; . . . that it acquires raw materials such as green and unprepared coffee, teas, spices and other materials which are unfit for human consumption, and can be used only after the same have been treated, milled, worked upon, and processed by human skill and ingenuity and mechanical devices and appliances of the plaintiff corporation; "In the case of Murphy v. Arnson, et al,96 U.S. 131, 134, 24 L.Ed. 773, the Court says: "In the present case, the original elements are fluids, and the manipulation and the materials blending with each form a union, which is as much a manufacture within the meaning of the statute as where the materials are mechanically joined together.' "In Dolese and Shepard Company v. O'Connell, 257 Ill. 43, 100 N. E . 235, 236, it is said: "As used in the statute, the word manufacture is not to be given its technical meaning. The century dictionary defines it as the production of articles for use from raw prepared materials by giving these materials new forms, qualities, properties or combinations, whether by hand, labor or machine. "Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road, or bridge." The word "industry" is broader in scope than the word "manufacturing," but it can be argued that the grain elevator operation described in the letter of Mr. Pearson dated January 22, 1972, is a manufacturing process for the reason that certain goods are taken in bulk, go through a drying process and other treating processes, mixed with other goods, and blended with other goods according to a certain ratio, and then sold. Even if this operation did not come within the term "manufacturing," it would come under the definition of "industry." It is, therefore, the opinion of the Attorney General that your question be answered in the affirmative in that a grain elevator operation, involving the receiving, drying, blending, conditioning and reshipment of wheat, soybeans and milo comes within the definition of an "industrial and manufacturing enterprise" as defined in Section 853 (f), Title 74 of the Oklahoma Statutes. (Todd Markum)