CARLISLE B. ROBERTS, Judge.
 

 The plaintiff appealed from defendant’s Orders No. VL 79-501 and VL 79-501A, dated August 23, 1979, and September 28,1979, respectively, denying cancellation of the plaintiff’s 1979-1980 real property tax assessment pursuant to ORS 307.330 (a statute creating exemption for some commercial facilities during the course of construction).
 

 
 *[462]
 
 Considered solely from the standpoint of time, the general requirement is that such facility is in the process of construction on January 1 and has not been in use or occupancy at any time before January 1 or on that date. However, in order for "nonmanufacturing” commercial facilities under construction to qualify for tax exemption, ORS 307.330(l)(e) requires that such facilities shall "be first used or occupied not less than one year from the time construction commences. * * *”
 

 The complaint alleges and the defendant’s answer admits that construction of the plaintiff’s improvement was completed within less than one year. Therefore, the plaintiff must prove that its improvement qualifies as a
 
 manufacturing
 
 facility in order to claim a tax exemption for 1979-1980.
 

 Norman Ralston, Jr., a vice president of the plaintiff corporation, testified that the company had been engaged in selling aircraft for over 25 years. Construction of the new facility was begun in mid-1978, with completion and occupancy on or about January 25, 1979. The witness testified that the plaintiff’s sales are composed of approximately 60 percent new aircraft and 40 percent used aircraft. Mr. Ralston further stated that when the plaintiff restores a demolished helicopter, it "builds” the new parts required, beginning with sheet ahxminum and fashioning the required parts per specifications indicated by the helicopter’s "tag” (which is issued by the FAA).
 

 In addition to making parts necessary to restore damaged aircraft, Mr. Ralston testified that plaintiff makes three "kits” for installation on aircraft: a propeller kit for turbine aircraft, a cold-weather kit and an oil-cooler kit. He estimated that 10 percent of the business was devoted to "manufacturing” in an area the witness referred to as the "machine room,” allegedly comprising approximately 10 percent of the subject property’s floor space. When questioned as to the location of the machine room on the construction blueprints (Exhibit 13), Mr. Ralston explained that his
 
 *[463]
 
 reference to "machine room” is designated as "piston room” on the blueprints.
 

 Kenneth Molczan, service manager for the plaintiff, testified that some parts included in the kits were purchased and modified by the plaintiff, while other components were manufactured by the plaintiff on the subject property. He explained that the manufacture of the cold-weather kit required six man-days and that 12 kits had been produced up to the present date. For the oil-cooler kit, requiring two man-days to produce, Mr. Molczan testified that the company buys a cooler and adds brackets and attachments. Production of this kit was begun in March 1980 and six kits have been sold.
 

 The defendant alleged that "manufacturing” requires that the original article or material be changed or transformed into a new and different creation and that a superficial change in the original does not constitute "manufacturing.” The plaintiff alleged that the taking of raw materials and fabricating some items as well as collecting parts and assembling them into a finished product qualified as "manufacturing.”
 

 Neither ORS 307.330 nor 307.340 defines "non-manufacturing” or "manufacturing.”
 
 State v. Maras-toni,
 
 85 Or 37, 165 P 1177 (1917), referring to Gen Laws 1915, ch 141, § 5, at 151, describes "manufacture” as to " 'make’ irrespective of quantity produced or use to which it is to be put.” If the plaintiff’s activity in repairing aircraft and introducing the above-mentioned kits is construed as "manufacturing,” is that activity of the proper significance to fulfill the requirements of ORS 307.330?
 

 According to testimony, the fabrication of the kits and of the parts made for the repair of aircraft were "manufactured” in the "piston room.” The entire building contains approximately 23,625 square feet
 
 *
 
 and
 
 *[464]
 
 the "piston room” contains 500 square feet of that total (Exhibit 13).
 

 Of the three types of kits, the plaintiff has made two kits of type 1 (but no testimony was offered concerning man-hours required per kit); 12 kits of type 2, requiring six man-days each; and testimony revealed that six kits of type 3 were sold, each of which required two man-days to produce. No evidence was given regarding the total man-hours involved in this "manufacturing” activity as compared with total activities. Space designated for "manufacturing activities” amounted to approximately two percent (500 square feet) of the total square footage of the facility (23,625 square feet).
 

 There seems to be little doubt that the legislature, in enacting ORS 307.330, wished to encourage and promote manufacturing industry in Oregon. Considering this legislative intent, it would appear that the legislature would approve what has been termed a "liberal construction” of this tax statute even though, in the matter of tax exemption, Oregon traditionally has been a "strict construction” state.
 
 Sal La Sea Dist. Imp. Co. v. Dept. of Rev.,
 
 7 OTR 436 (1978).
 

 "Liberally construed,” however, does not mean "liberally extended.”
 
 Hyster Company v. Dept. of Rev., 4
 
 OTR 351, 357 (1971). The evidence indicates that the plaintiff’s manufacturing activities, if any, are de minimis in relation to total activities. To exempt the total facility from taxation because approximately two percent of the facility’s square footage is used for ostensible manufacturing is a more liberal extension of ORS 307.330 than this court is willing to make. The total testimony of the plaintiff reveals, as "manufacturing,” (1) some shaping of sheet metal and drilling holes therein, to be used with purchased manufactured items in a few assemblies, to be attached to existing aircraft; and (2) sheet metal work in the restoration of damaged or wrecked aircraft. The court finds that plaintiff has not sustained the burden of proof necessary to establish the tax exemption.
 

 
 *[465]
 
 Therefore, it is held that the plaintiff’s facility does not qualify for tax cancellation pursuant to ORS 307.330. Defendant’s Orders No. VL 79-501 and VL 79-501A must be sustained. The defendant is awarded its costs.
 

 *
 

 Mr. Ralston testified that the subject property has two floors with the sales force located on the second floor. Exhibit 13 does not show an upper floor and reference herein to "total square footage” refers to the ground floor only.