(C. D. 335)

Pacific Trading Co. *v.* United States

United States Customs Court, Third Division

(Decided May 13, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh* and *Joseph E. Weil*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an action against the United States wherein the plaintiff seeks to recover certain sums of money claimed to have been unlawfully exacted on an importation of merchandise entered as frozen headless frogs at the port of San Francisco. The commodity involved originated in Japan. It was classified by the collector as "game, not specially provided for" under paragraph 704 of the Tariff Act of 1930 at 6 cents a pound. Plaintiff claims it is properly dutiable at 10 or 20 per centum ad valorem under paragraph 1558 of the same law as unenumerated articles, or under paragraph 717 (a), (b), or (c); or under paragraph 718 (b), or 719 (5), relating to "other fish."

A witness for the importer, qualified to testify, said that frogs of this character are raised on frog farms in what he called "pens"; that they are kept in the pens according to size. He introduced a photograph as Exhibit 1, which shows a group of small pools each surrounded by a solid board fence provided with a pipe which looks as if it were there for the purpose of taking care of excess water. He said the frogs are beheaded, eviscerated, skinned, and the remainder of the frog packed for shipment.

The defendant objected to testimony concerning the method of raising the frogs, etc., as being immaterial. On the theory of plaintiff that the commodity is not game, we think the testimony is competent.

The defendant offered the testimony of an official connected with the Fish and Game Bureau of the State of California, whose testimony, in our judgment, was properly rejected. The examiner who passed upon the merchandise testified as to his having hunted frogs on the Sacramento River some 8 or 10 years prior to the hearing. He described the method of capturing the frogs.

In the brief the importer rests his case largely on the contention that these frozen frogs were not properly classified as game but should have been classified as unenumerated, unmanufactured articles. Concerning the claims of the protest that the commodity is dutiable as fish of various kinds, we observe that no testimony was offered in support of these claims. We therefore overrule the same and in so doing cite the case of *Ingersoll* v. *United States*, T. D. 11566, G. A. 741, wherein it was held that the provision for fish did not extend to frogs or other amphibious animals.

The New English Dictionary, 1901 edition, describes game as follows:

11. Collect. Wild animals or birds such as are pursued, caught or killed in chase.

b. The flesh of such animals for food.

Webster's International Dictionary defines game to be:

An animal or animals under pursuit or taken in hunting; in a collective sense, the various animals (chiefly birds and mammals) which are considered worthy of pursuit by sportsmen.

To the same effect is the decision of the Court of Customs Appeals in the case of *United States* v. *General Hide & Skin Corporation*, 11 Ct. Cust. Appls. 78, T. D. 38731, wherein it is stated:

No testimony was introduced before the board. It assumed, as do we, that these rabbits were wild, and correctly stated that the word "game" as used in the statute, carries with it the idea of animals *ferae naturae*, which are hunted, sought for, and killed by the hunter. To this we might add that often it also implies that the meat of such game is useful for food.

That case arose under the tariff act of 1913, paragraph 227 of which provided for "Venison, and other game."

Nowhere have we been able to find that the definition of the term "game" has ever been so broad in scope that it would include amphibians. We therefore are of the opinion that the collector's classification is erroneous.

The description of the method of preparation, in our judgment, does not constitute a process of manufacture. It consists simply of a method of cleaning and recovery of the article imported. There is no provision in the statute for frozen frogs. An early line of decisions, as well as rulings of the Treasury Department, classified frogs and dressed frog legs, etc., as unenumerated unmanufactured articles. See T. D. 10270; *Ingersoll* v. *United States*, T. D. 11566, G. A. 741; *Myers* v. *United States*, T. D. 26190, Abstract 5410.

It is true that in 1923 the Treasury Department held in T. D. 39871 that frogs' legs are dutiable as "other game," and that ruling is cited in the appraiser's report in the instant case as authority for the assessment here made.

However, we find no authority for such ruling either in the statute itself or in the definitions of game as found in the dictionaries.

We therefore follow the earlier line of precedents and hold that the merchandise in controversy is properly dutiable as an unenumerated, unmanufactured article at 10 per centum ad valorem under the provisions of paragraph 1558 of the Tariff Act of 1930, as claimed by the plaintiff.