221

(C. D. 610)

PACIFIC TRADING CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 6, 1942)

*Lawrence & Tuttle (George R. Tuttle* ,of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks* and *Richard H. Welsh,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: This case presents a question of the amount of duty properly assessable upon an importation of frozen frogs. The collector of customs at the port of San Francisco, where the frogs were entered, assessed duty at the rate of 6 cents a pound under the provisions of paragraph 704 of the Tariff Act of 1930, as game. Plaintiff brought this action claiming that the frogs were properly dutiable at the rate of 10 per centum ad valorem under paragraph 1558 of the same act as unenumerated unmanufactured articles.

The respective provisions of the act are in the following language:

PAR. 704. Reindeer meat, venison and other game (except birds), fresh, chilled, or frozen, not specially provided for, 6 cents per pound.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

On the part of the Government it is claimed that although the collector has classified the commodity as game, that classification is not deemed to be correct but it is contended that the commodity is properly dutiable as frozen meat, not specially provided for, at the rate of 6 cents per pound, but not less than 20 per centum ad valorem under the provisions of paragraph 706 of said act. That paragraph is as follows:

PAR. 706. Meats, fresh, chilled, frozen, prepared, or preserved, not specially provided for, 6 cents per pound, but not less than 20 per centum ad valorem.

In its brief the Government states that the claim as game is not urged in view of the holding of the Treasury Department as set forth in T. D. 50219 (5). That holding is as follows:

(5) *Frozen frog legs* are dutiable as frozen meat, not specially provided for, at the rate of 6 cents per pound but not less than 20 per centum ad valorem under paragraph 706, Tariff Act of 1930, rather than under the provision for "other game, * * * frozen, not specially provided for" under paragraph 704 of the tariff act or as a nonenumerated unmanufactured article under paragraph 1558. C. D. 335 noted. * * *

At the hearing the record in the case of *Pacific Trading Co.* v. *United States*, 4 Cust. Ct. 251, C. D. 335, was incorporated and it was agreed that the merchandise in both cases was the same. In the incorporated case this court held that the frozen frogs there involved, which had been beheaded, eviscerated, and skinned, were not game as provided for in paragraph 704, *supra*, but were dutiable as un-enumerated, unmanufactured articles at 10 per centum ad valorem under paragraph 1558, *supra*. The testimony in the incorporated record was that the portion of the frog which is imported is the only edible portion.

That decision was based upon earlier decisions which held that the term "game" as used in the statute "carries with it the idea of animals *ferae naturae*, which are hunted, sought for, and killed by the hunter." The court, after quoting from dictionary definitions of game, all of which referred to wild animals or birds which are hunted, stated:

Nowhere have we been able to find that the definition of the term "game" has ever been so broad in scope that it would include amphibians.

In line with a number of earlier decisions the conclusion was there reached that the frog legs were dutiable as unenumerated, unmanu-factured articles. No claim for classification as meat was before the court in that case.

In the instant case the Government introduced the testimony of a witness who had been engaged in the shellfish business in San Fran-cisco for about 35 years, both importing and buying and selling, and who stated that he deals in frogs, fresh, frozen, and alive, has dealt in the frozen frogs as far back as 1930, and has imported frozen frogs from Japan ever since that time. His sales are made to restaurants and hotels. As to the use of these frogs his observation based upon his experience has been that they are used for edible purposes only.

The Government also introduced the testimony of a scientist, the curator of herpetology at the California Academy of Science. He defined herpetology as a study of reptiles and amphibians that creep. His experience in study and research along this line has extended over 35 years. This witness stated that he had made a study of frogs to a limited extent by comparing their internal anatomy with that of reptiles, and has been dissecting frogs for 4 or 5 years. As a result of

this experience he was able to state that a frog breathes through its lungs and also its skin; that the term "amphibian" means an animal that lives either on land or in the water, and that a frog is called a cold-blooded vertebrate and is an amphibian; and that a fish is not an amphibian. The difference between a frog and a fish is described by this witness as follows:

A fish has one condyle; the frog has two condyles. The frog has two auricles to the heart; the fish has one. That is the universal distinction.

In the light of the decision in the *Pacific Trading Co.* v. *United States, supra,* it is clear that frogs are not fish. Nor can they be classed under the term fowl as that term has been defined by lexicographers. We quote from Webster's New International Dictionary the definition of fowl as follows:

*fowl.* * * * 1. Orig., a bird of any k' ̣, later a large or edible bird;— now usually replaced by the word *bird* in these senses, though persisting in combination, as in wild *fowl,* water*fowl,* sea *fowl,* etc.

2. Any winged or flying animal, as a beetle or a bat.

3. When used alone, commonly, the domestic cock or hen * * * esp. when considered as an article of food. In combination, any of certain other gallinaceous birds, esp. the wild species of the genus *Gallus* and those of *Numida.* * * *

4. The meat of fowls, esp. of the domestic fowl, used as food; also, a mature hen, as disting. from a *broiler, capon,* etc.

Funk & Wagnalls New Standard Dictionary defines the term as follows:

*fowl.* 1. The common domestic cock or hen * * * of which the East Indian jungle-fowl * * * is probably the original. * * * 2. The flesh of fowls, especially of the full-grown domestic hen, as food; in cookery, distinguished from that of the chicken or pullet. 3. pl. Poultry in general; as, all the *fowls* in the barn-yard set up a clamor. 4. Birds collectively; as, wild *fowl* were abundant; the sea-*fowl* are shrieking. 5. * * * Any bird, chiefly in Biblical use; as, the *fowls* of the air.

* * * * * * *

The word *fowl* was once the common term for feathered creatures in general, but has now been replaced in this sense by *bird.* In the transition period, and as late as the middle of the 18th century, *fowl* meant a large feathered creature and *bird* a small one. * * * . ̣

In Webster's International Dictionary we find ·the definition for flesh given as follows:

1. In its broadest sense, the soft parts of the body of man or of an animal, especially a vertebrate animal, usually excluding the integument. Commonly, however, flesh is used of those parts composed chiefly of muscle, and hence excludes most of the viscera contained in the cavities of the body. When used or prepared for use as food it is commonly termed *meat* (see def. 2). * * *

2. Animal food; meat; often, specif., the body of beasts and birds used as food, as distinguished from fish; sometimes, the body of beasts, excluding *fish* and *fowl.*

The same term is defined in the Oxford Dictionary, as:

4. The muscular tissue, or the tissues generally, of animals, regarded as an article of food. Exc. when otherwise defined by the context, always understood as excluding *fish* (see Fish sb. 1), and in recent use primarily suggesting "butchers' meat", not poultry, etc. * * *

Webster's New International Dictionary gives the following definition of frog:

1. Any of numerous tailless leaping amphibians of the genus Rana and other more or less nearly allied genera. * * * The flesh of frogs, esp. that of the hind legs, is highly esteemed.

The testimony presented shows that a frog is an amphibian and is a cold-blooded vertebrate and is edible. From the definitions above set forth and the testimony the Government contends that frog legs are meat.

In this connection the Government in its brief has set forth certain definitions of meat as found in Webster's and the Oxford dictionaries. We will set forth those definitions a little more fully than they appear in the Government brief as follows:

Webster's New International Dictionary, second edition, gives the following definition:

*meat.* * * * 3. The flesh of animals used as food; * * * specifically flesh * * *. Commercially, in the United States *meat* means the dressed flesh of cattle, swine, sheep, or goats, except where used with a qualifying word, as in *reindeer meat, crab meat.*

Funk & Wagnalls New Standard Dictionary states

*meat.* 1. The flesh of vertebrate animals used as food: sometimes limited, colloquially, to the flesh of mammals, as opposed to poultry, game, fish, frogs, turtles, and the like.

Colloquial is defined as:

Pertaining or peculiar to common speech as distinguished from literary.

It has been held that the scientific meaning of a tariff term is of no importance inasmuch as tariff acts are not drafted in the terms of science but in the language of commerce, which is presumptively that in common use. *Bakelite Corporation* v. *United States,* 16 Ct. Cust. Appls. 378, T. D. 43117; *Meyer & Lange* v.*United States,* 6 Ct. Cust. Appls. 181, T. D. 35436. Therefore the fact that the term "meat" is sometimes limited in common speech to the flesh of mammals as opposed to frogs assumes significance. The Government in contending for that classification has offered no competent testimony as to the use of the term in trade and commerce of the United States. Moreover, Congress has reenacted the provision for meat in the various tariff acts presumably with knowledge of the early decisions which held frogs and frog legs dutiable as unenumerated, unmanufactured articles. In the light of that knowledge no provision was made for frogs or frog legs in the later enactments. Therefore it is presumed that the legislative body approved such classification.

Nothing has been presented in the instant case which causes us to depart from the earlier holdings and from our decision in the case of *Pacific Trading Co.* v. *United States, supra.*

· We therefore find that the frogs here involved are properly dutiable as unenumerated, unmanufactured articles under paragraph 1558, *supra*, at 10 per centum ad valorem as claimed by the plaintiff and as held in the *Pacific Trading Co.* case, *supra.*

Judgment will be rendered accordingly.