(C. D. 1815)

ATALANTA TRADING CORP. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided October 18, 1956)

*Martin A. Fromer; Tompkins & Tompkins (Allerton deC. Tompkins of counsel),* associate counsel; for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

DONLON, Judge: Once again we are called upon to consider the tariff classification proper for frog legs. Controversy over this issue has continued for 50 years, and there are numerous decisions.

The merchandise here is frog legs that were imported from Japan through the port of New York. These frog legs were classified under paragraph 1558 as a nonenumerated unmanufactured article and charged with duty at 10 per centum ad valorem.

The protest presents two alternative claims, both for enumerated classification. The first claim is that frog legs should be classified as game, not specially provided for, either directly or by similitude, under paragraph 704 of the Tariff Act of 1930 and charged with duty at 3 cents per pound under the modification of paragraph 704, effected by the General Agreement on Tariffs and Trade, T. D. 51802. The second claim, alternatively, is that frog legs should be classified, by similitude, as fish, with duty at 1½ cents per pound under paragraph 717 (b), as modified by the General Agreement on Tariffs and Trade, T. D. 51802.

On plaintiff's motion there has been incorporated into the record in this case the record in *Atalanta Trading Corp.* v. *United States,* 42 C. C. P. A. (Customs) 90, C. A. D. 577, with the exception of that part of the record in the *Atalanta* case which records the testimony of two witnesses concerning the method of producing frog legs in Cuba. In the case before us, the frog legs were produced in Japan, and the method of production in Cuba was deemed not relevant to the instant issue.

Defendant objected to incorporation of the *Atalanta* record or any part of it, on the ground that the sole issue now before us is one of law. This objection seems to assume that, in tariff cases, facts are not needed by the court in order to decide an issue of law. We found this objection not well taken. The partial record was incorporated and is now before us, together with the testimony adduced on trial.

The gist of the current controversy is whether, on the record before us, including the incorporated record, plaintiff has borne successfully

its burden of proof, overcoming the presumption of correctness that attaches to the collector's classification. Does this record bring frog legs within either of the enumerated classifications for which the plaintiff contends?

It is a sound and well-recognized principle of tariff construction that enumeration in the statute, either directly or by similitude, will prevail over the unenumerated provision. *Isler & Guye* v. *United States*, 11 Ct. Cust. Appls. 340, T. D. 39146.

Resort will not be had to the unenumerated provision, if some enumerated provision is applicable to the merchandise. Indeed, the Congress has given convincing evidence, in paragraph 1559, of its intention to limit application of the unenumerated provision, by taking out of it those unenumerated articles that are "similar, either in material, quality, texture, or the use" to which they may be applied, to some enumerated article, chargeable with duty. It is clear that unenumerated classification, under paragraph 1558, was not intended, unless and until enumeration, directly or by similitude, has been ruled out.

The first issue to be disposed of is whether, as the defendant argues, the decision in *Atalanta Trading Corp.* v. *United States*, 32 Cust. Ct. 19, C. D. 1574 (affirmed 42 C. C. P. A. (Customs) 90, C. A. D. 577), is *stare decisis* of the classification issues that are here presented. The court is not bound to follow its own prior decision.

\* \* \* The rule of *stare decisis*, though one tending to consistency and uniformity of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a question once decided. [*Hertz* v. *Woodman*, 218 U. S. 205, p. 212.]

To be sure, this discretion should be exercised carefully. At the very least, the court should balance the consistency and uniformity of decision, mentioned as desirable by the Supreme Court in the *Hertz* case, *supra*, against such scrutiny of the facts and issues in a later case as may distinguish it from the earlier case or point up the error of that decision. The prior *Atalanta* decision, *supra*, concerned frog legs imported from Cuba and charged with duty under the *eo nomine* provision for frog legs, under paragraph 1558, in the exclusive trade agreement with Cuba, T. D. 51819. It is but one of many decisions in the long course of litigious controversy as to tariff classification of frogs and frog legs. Moreover, the record now before us has new evidence, particularly relevant to the claim for game classification, that was not presented in the incorporated record. The complete new record, in our opinion, merits judicial review.

The uncertainties that have given rise to controversy as to the proper tariff classification of frogs and frog legs go back more than 50 years. Under date of October 8, 1890, the Assistant Secretary of the Treasury issued an opinion on the subject, which was published

as Synopsis 10270 (Treasury Department 1890, p. 403). This opinion throws light on the subject, back to 1879. The full text of the opinion is as follows:

SIR: The Department is in receipt, by reference from you, of a letter from the collector of customs at Detroit, Mich., dated the 24th ultimo, from which it appears that frogs (not alive) have for many years been classified at that port as exempt from duty under the provision in T. I. 699, for "fish, fresh, for immediate consumption," and you ask information as to the proper classification thereof.

In reply, I have to inform you that the question has never been decided by the Department, but in a letter addressed to Mr. H. C. Anthony, Rochester, N. Y., under date of June 13, 1879, it was suggested that such frogs were dutiable at the rate of 35 per cent. ad valorem as "prepared meats," but this suggestion appears to be untenable, as it is understood that the frogs are not prepared in any manner, but are merely dead frogs.

The Department is of opinion that they are unprovided for in the act of March 3, 1883, and should have been classified as raw, unmanufactured articles under section 2513 at 10 per cent. ad valorem.

Respectfully yours,

O. L. SPAULDING,
*Assistant Secretary.*

To the FIRST AUDITOR.     (5638 *f.*)

The new ruling was promptly challenged. *B. E. Ingersoll* v. *United States*, July 10, 1891, Synopsis 11566 (G. A. 741).

In the *Ingersoll* case, an importation of frog legs at the port of Oswego on June 18, 1891, had been liquidated as raw unmanufactured articles under section 4 of the Tariff Act of 1890 (formerly section 2513 of the act of March 3, 1883), in accordance with the opinion of the Assistant Secretary, issued October 8, 1890. The protest claim did not raise any issue as to whether frogs were or were not game, fish, or meat, directly or by similitude. It claimed, based on the previous classification practice alluded to by the Assistant Secretary, that the instant "frogs, being the product of American fisheries, are entitled to free entry, under the last clause of paragraph 661, tariff act of 1890." Paragraph 661 granted free entry for fish, produced through American fisheries, and added, in the last clause on which the protest rested, free entry also for—

* * * spermacetti, whale, and other fish oils of American fisheries, and all *other articles the produce of such fisheries.* [Emphasis supplied.]

The Board of General Appraisers found no evidence "that the frogs in question are the produce of American fisheries," which was the condition for free entry laid down in paragraph 661, and, accordingly, the protest was overruled. The plaintiff had failed to overcome the presumption of correctness attaching to the collector's classification. That is what the *Ingersoll* case holds. It did not call for a decision as to what the appropriate tariff classification of frogs might be, in competition between the unenumerated provision and some enumer-

ated provision, other than the duty-free provision in paragraph 661, an exemption obviously limited to articles, produced in American fisheries.

Some confusion may have been caused by certain *dicta* of the board in the *Ingersoll* case. Having disposed of the issue under the fisheries provision of paragraph 661, the litigated paragraph, the board went on to observe that, although paragraph 591 of the Tariff Act of 1890 makes provision for free entry of fish "caught in fresh waters with nets or other devices owned by citizens of the United States," this provision "does not extend to frogs or other amphibious animals thus caught, *and, indeed, the importer makes no such claim.*" [P. 1008, emphasis supplied.]

The Tariff Act of 1897 provided a new enumeration for "dressed poultry" (paragraph 278) but no enumeration for frogs or frog legs. The Treasury Department, under the 1897 act, classified dressed frogs and frog legs as dressed poultry, by similitude, under paragraph 278. (T. D. 24959.)

In *F. W. Myers & Co.* v. *United States*, 9 Treas. Dec. 509, Abstract 5410, the Board of General Appraisers ruled against this classification, holding that frog legs "bear no such substantial resemblance to poultry or any of the other meats enumerated in the act as to justify assessment at the same rate by similitude." Judgment, accordingly, was for the plaintiff, who had claimed nonenumerated classification.

The Tariff Act of 1909 provided a new enumeration for game, paragraph 285, and this provision—with certain modifications not significant here—was continued as paragraph 704 of the Tariff Acts of 1922 and 1930. On November 17, 1923, the Treasury Department issued T. D. 39871, ruling that frog legs are properly to be classified under paragraph 704 as "other game * * * not specially provided for." Customs officials were directed to govern themselves accordingly, and there is nothing to indicate that they did not do so. Indeed, the Summary of Tariff Information, 1929, which was before the Congress when the Tariff Act of 1930 was considered and enacted, stated (p. 1044) that frog legs "have been held dutiable under the provision in paragraph 704 for 'other game' n. s. p. f." It appears that this is the sole reference to frog legs in the 1929 summary, and this, then, is the only direct clue we have to congressional intent on the subject as a guide in construing the Tariff Act of 1930.

The 1930 act continued an enumeration for game, the classification then followed by the Treasury Department for frog legs, but there was no *eo nomine* provision for frog legs.

In 1940, there was another decision as to the classification of frogs. The collector, having classified frozen frogs, beheaded, eviscerated, and skinned, as game, not specially provided for, under paragraph 704

of the 1930 act, the court upheld the plaintiff's protest in *Pacific Trading Co.* v. *United States*, 4 Cust. Ct. 251, C. D. 335 (1940), holding the frogs dutiable, as the plaintiff claimed, as unenumerated unmanufactured articles under paragraph 1558.

Following this decision, the Treasury Department shifted its classification of frozen frog legs from game, not specially provided for, under paragraph 704, to meat, not specially provided for, under paragraph 706. A ruling to this effect was issued, in August 1940, as T. D. 50219 (5).

Thereafter, and while there was pending in this court a second *Pacific Trading Co.* case, the Government negotiated a supplemental agreement with Cuba providing, *inter alia*, for a preferential rate on frog legs imported from Cuba (T. D. 50541). This agreement made *eo nomine* provision for frog legs under paragraph 706 (the paragraph covering frozen meat, not specially provided for by statute) and was entered into in January 1942.

In April 1942, this court handed down its decision in the second *Pacific Trading Co.* case, *Pacific Trading Co.* v. *United States*, 8 Cust. Ct. 221, C. D. 610. The frozen frog legs, subject of the protest in that case, had been liquidated by the collector as game under paragraph 704. The protest claimed that frozen frog legs should be classified as unenumerated unmanufactured articles under paragraph 1558. On trial, the Government, in view of the position taken in T. D. 50219 (5), *supra*, and, apparently, because of the *eo nomine* provision in the newly negotiated Cuban agreement, claimed, alternatively, classification of frozen frog legs as frozen meat under paragraph 706. The court again held, as it had in the first *Pacific Trading Co.* case, that frozen frogs are dutiable, under the 1930 act, as unenumerated unmanufactured articles under paragraph 1558, overruling the Government's claim for classification either under paragraph 704 as game or under paragraph 706 as meat.

The Treasury Department, after a prolonged attempt for several decades to obtain judicial approval of some enumerated classification for frogs and frog legs, then accepted unenumerated classification. On January 11, 1943, T. D. 50799 was issued, ruling that fresh, chilled, frozen, prepared, or preserved frog legs are dutiable at 10 per centum ad valorem as nonenumerated unmanufactured articles under paragraph 1558, unless the processes applied have so advanced the condition of the merchandise that nonenumerated manufactured classification is appropriate. The agreement with Cuba was revised accordingly.

Having, through their protests, finally established nonenumerated classification for frogs and frog legs, some importers now began to seek enumerated classification, taking up as their own the battle that the Treasury Department had abandoned.

In *Atalanta Trading Corp.* v. *United States*, 32 Cust. Ct. 19, C. D. 1574, part of the record of which has been incorporated into this record, the plaintiff objected to the collector's classification of frozen frog legs as unenumerated unmanufactured articles under paragraph 1558 and claimed classification as game or fish, as in the instant case. This court overruled the protest, and the decision was affirmed on appeal. *Atalanta Trading Corp.* v. *United States*, 42 C. C. P. A. (Customs) 90, C. A. D. 577.

In the light of this judicial history of the controversy as to classification of frogs and frog legs, we now proceed to consider plaintiff's alternative claims in the instant case.

The first claim is that frog legs should be classified under paragraph 704 as "other game * * * fresh, chilled, or frozen, not specially provided for," either directly or by application of the similitude provision of paragraph 1559. Are these frog legs game, within the meaning of paragraph 704?

Plaintiff called two witnesses to testify as to the production of frog legs in Japan. Mr. Irving P. Farber testified that he is familiar with how frogs have been raised and caught in Japan since 1949; that he has "visited all the different provinces or states or localities, as you might call them, where frogs are caught in Japan." (P. 20.) He participated in the hunting of frogs there. (P. 21.) He described in some detail the method of hunting. (pp. 24, 25.) He said that frogs are not raised in captivity in Japan (p. 27); indeed, raising in captivity has been tried but "failed completely." (P. 28.) On cross-examination, he reiterated that "from 1949 I don't know of any frog farms or frogs raised in captivity." (P. 33.) Judge Johnson, after cross-examination, elicited further testimony from Mr. Farber as to how frogs are hunted in Japan.

Many years ago our appeals court, in *United States* v. *General Hide & Skin Corporation*, 11 Ct. Cust. Appls. 78, T. D. 38731 (1921), construed the meaning of the term "game," as it was used in paragraph 227 of the Tariff Act of 1913, predecessor of paragraph 704 of the 1930 act. In that decision, the court said:

* * * the word "game," as used in the statute, carries with it the idea of animals ferae naturae, which are hunted, sought for, and killed by the hunter. To this we might add that often it also implies that the meat of such game is useful for food. (P. 79.)

The holding in that case was that canned wild rabbit meat was game meat, within the purview of paragraph 227 of the 1913 act.

Various dictionary definitions were considered by this court in *Pacific Trading Co.* v. *United States*, 8 Cust. Ct. 221, C. D. 610, in reaching its decision that frogs are not meat. That decision rested on the common, rather than the scientific, meaning of the term "meat," as the court was careful to point out.

It has been held that the scientific meaning of a tariff term is of no importance inasmuch as tariff acts are not drafted in the terms of science but in the language of commerce, which is presumptively that in common use. *Bakelite Corporation* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117; *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436. Therefore the fact that the term "meat" is sometimes limited in common speech to the flesh of mammals as opposed to frogs assumes significance. The Government in contending for that classification has offered no competent testimony as to the use of the term in trade and commerce of the United States. (P. 224.)

There is no competent testimony in the instant record that frog legs are considered to be meat in the trade and commerce of the United States. Plaintiff conceded, in the course of trial, that "other game," as those words occur in paragraph 704, are not used to denote game animals, but rather to denote game meat. This court so held in *Wilbur-Ellis Company* v. *United States*, 29 Cust. Ct. 155, C. D. 1460. This limits our consideration of paragraph 704. Whether or not frogs are game, as this court seemed inclined to hold by taking judicial notice, in the *Atalanta* case, *supra*, that frogs are "hunted and caught," it is *game meat* only to which paragraph 704 relates.

The second *Pacific Trading Corp.* case, *supra*, holds that frog legs are not meat. There is nothing in the record before us to support a ruling that they are meat, either game meat or any other kind of meat.

The requirements of the similitude provision are not met by mere proof of general usage of two products. *Murphy* v. *Arnson*, 96 U. S. 131; *Roovers Bros., Inc.* v. *United States*, 23 Cust. Ct. 53, C. D. 1190. Aside from showing a generally similar use of frog legs and the meat of other game as food, the record fails to establish the similarity of use, required by the test laid down in the *Murphy* case, *supra*.

In *Corporacion Argentina de Productores de Carnes* v. *United States*, 29 C. C. P. A. (Customs) 288, C. A. D. 204, our appeals court held that proof that dog food is used as dog food does not establish classification by similitude of use with such dog foods as contain a small percentage of grain or grain products, under the mixed feeds provision of paragraph 730. The proofs before us seem intended to establish similitude between frog legs and fish, rather than between frog legs and meat.

As to the claimed similitude to fish, there was little new evidence, but the incorporated record is fairly extensive. Biologically, frogs and fishes have the common characteristic that both are cold blooded (p. 97, incorporated record); the texture of frog legs is similar to lobster claws (p. 17, incorporated record); the taste is similar to the tenderloin of blowfish (p. 35, incorporated record) and to the white portion of sturgeon (p. 15, incorporated record), but, in such cases, the similarity is dependent on preparation in the same way (pp. 32, 37, incorporated record); and frog legs are distributed and sold through the same channels as fish items (p. 45, incorporated record).

Plaintiff argues that it has proved similarity between frog legs and fish in quality, texture, and use. We are of opinion that this it has not done. The limitations with which the Congress hedges the similitude provision of paragraph 1559 were discussed by our appeals court in *Mary G. Ricks* v. *United States*, 33 C. C. P. A. (Customs) 1, C. A. D. 308 (1945). The tests there stated, and in the cases cited in that opinion, have not been met.

Our decision in this case does not rest on the Executive action which made *eo nomine* provision for frog legs under paragraph 1558, in the exclusive trade agreement with Cuba, T. D. 51819. If by the weight of evidence plaintiff had proven either enumeration or the similitude of this product contemplated by paragraph 1559, the Executive action would not, in our opinion, prevail against the statutory enactment.

The protest is overruled. Judgment will be rendered accordingly.