# SAL LA SEA DISTRICT
# IMPROVEMENT COMPANY
*v.*
# DEPARTMENT OF REVENUE

Stephen A. Lovejoy, Lovejoy and Malco, Lincoln City, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 1, 1978.

CARLISLE B. ROBERTS, Judge.

The plaintiff purports to be a "not organized for profit" Oregon corporation, created pursuant to ORS 554.010 to 554.600, for the purpose of providing a domestic water supply for unimproved, nonplatted real property, referred to (in the complaint and exhibits) variously as "Sal-La-Sea II" and "Sal-La-Sea Subdivision #2" (hereinafter designated Sal La Sea II). The statute requires that such a corporation, created for the use or control of water, shall specify in its articles of incorporation, pursuant to ORS 554.040:

"(3) The particular land to be improved by the works of the corporation, describing the land by legal subdivisions so far as possible and otherwise by tracts or lots of duly platted land or by metes and bounds, with the acreage thereof and the names of the respective owners as shown by the records of the county, and the total number of acres."

In its articles of incorporation, the plaintiff described by metes and bounds and specified the 497 acres of Sal La Sea II. The corporate articles were filed with the Corporation Division, Department of Commerce, State of Oregon, on October 17, 1972.*

---

*The court notes that the corporation appears not to have been entitled to certification by the Oregon Department of Commerce, Corporation Division, because its proposed articles violated the specification in ORS

Mr. Donald Ragan Lucas, at the time of his purchase of the land comprising Sal La Sea II, also purchased from the same seller the existing Sal La Sea Subdivision, Blocks 2 and 3 (hereinafter designated Sal La Sea I), which apparently contained a waterworks and water distribution system. The purchaser took over the operation of this system, commencing on June 1, 1972, agreeing to operate and maintain and to perform and carry out the duties and obligations of the seller with respect to the supplying of water to the lots in Sal La Sea I.

The court concludes from the record that the buyer found it was impossible to develop water on the site of Sal La Sea II and that the system within Sal La Sea I was insufficient to supply water to Sal La Sea II (the development of which could not be continued without a water supply meeting the requirements of the state and of the county). Consequently, on March 12, 1973, the plaintiff, Sal La Sea District Improvement Company, purchased from W. H. Day and Agnes H. Day the water system of Roads End, another subdivision already developed to a considerable degree, which lies adjacent to and west of Sal La Sea I and adjacent to a small part of the western boundary of Sal La Sea II.

It is clear that the Roads End purchase was made for the purpose of getting water into Sal La Sea II. However, the Roads End Water System was and is a public utility subject to the jurisdiction of the Public Utility Commissioner of Oregon. It was necessary for the sellers and the buyer to apply to the commissioner for approval of the sale. In their petition, sellers and plaintiff stated that one of the terms of the transaction was "that the available water of Roads End Water

---

554.010 requiring the minimum number and kind of incorporators to be "[a]ny number of landowners not less than three." The incorporators of the plaintiff in this suit were the corporation selling and the individual buying the 497 acres designated as Sal La Sea II. The defect has never been remedied. However, the defendant has not raised (and could not raise) an issue respecting this failure.

System will not be utilized or diverted by or into the subdivision known as Sal-La-Sea #2." (*See* PUC Order No. 73-363, dated June 12, 1973.)

On March 5, 1975, plaintiff filed a supplemental application with the Public Utility Commissioner requesting that PUC Order No. 73-363 be amended to remove the restriction. This application was denied in PUC Order No. 75-834, dated September 30, 1975. In May 1977, an agent of the PUC discovered that approximately 1,700 feet of four- and six-inch main had been constructed into Sal La Sea II and was connected through Sal La Sea I to the Roads End System. The plaintiff was ordered to block the interconnection. A complaint was filed on June 10, 1977, by the State of Oregon, acting by and through the Health Division of the Department of Human Resources against plaintiff, seeking an injunction, requiring the district improvement company to remove the water transmission facilities, above described, connecting Roads End and Sal La Sea II.

The defendant Department of Revenue is charged with the duty to assess the property of various water districts which are not otherwise exempt from ad valorem taxation, pursuant to ORS 308.505 to 308.665. While examining its assessment roll for 1977, pursuant to ORS 308.590, the Director of the Department of Revenue discovered that property assessable to Sal La Sea District Improvement Company, having a true cash value of $5,500, had been omitted from the 1977 rolls. Defendant's Order No. A&AU 77-40. This apparently relates to the plaintiff's Sal La Sea I water system. In a supplemental order, Order No. A&AU 77-43, omitted assessments were made for the same property for the tax years 1974 ($6,400 true cash value), 1975 ($6,100), and 1976 ($5,800). In a further order, Order No. A&AU 77-41, the plaintiff's petition to exempt the Roads End Water System for 1977 and past and future years was denied and the value for January 1, 1977, was affirmed at $60,000. (Each of the orders is dated July 15, 1977.)

[ 439 ]

The plaintiff has appealed from the three orders of the defendant Department of Revenue on the ground that plaintiff's water systems in the Roads End District and Sal La Sea I are and were exempt under ORS 554.320 as property of a tax-exempt district improvement company.

The Department of Revenue's position "is that ORS Chapter 554 is very specific concerning the activities of corporations formed under its provisions and the geographic area to be served by the specific activity * * *." (Order No. A&AU 77-40, at 1.) The defendant concluded that if a district failed to operate as required by ORS chapter 554, it cannot lawfully claim the benefits of the tax exemption provided in ORS 554.320. The defendant held that, as the plaintiff admittedly provides no water service to or within the land area described in its articles of incorporation, there is nothing to exempt as to Sal La Sea II, and the claim for exemption cannot be carried over to water systems, owned by the district improvement company outside the corporate area, which are not and presently cannot be utilized for the benefit of the area within the boundaries of the corporation.

Plaintiff contends that its articles of incorporation recite the necessary requirements of ORS 554.050, establishing the plaintiff as a nonprofit corporation, and that purchase of the Roads End and the Sal La Sea water systems by plaintiff was a proper and advantageous method of accomplishing its intended corporate purpose. It argues that, under ORS 554.270(1), the plaintiff corporation has a broad statutory authority to purchase or lease any waterworks or water rights which it deems in the best interest of the corporation. Further, it stresses that ORS 554.320 provides:

> "The property and income of a corporation organized under the provisions of ORS 554.010 to 554.340, but not for profit, the articles of incorporation of which recite the things mentioned in ORS 554.050, *shall be exempt from taxation.* * * *" (Emphasis supplied.)

■ The determination of the corporation's status as exempt or nonexempt must be made by considering the provisions of ORS 554.010 et seq. as a whole, in order to glean the legislative intent and to make it effective within the factual situation presented in this suit.

The nature of corporations for the use and control of water, created pursuant to ORS 554.010 et seq., is described in 45 Or L Rev 278, 281-282 (1966). Such corporations are called "district improvement companies" if they are organized for profit and "improvement districts" if nonprofit (but this provision is not always observed). Such corporations were first sanctioned in 1911 (Gen Or Laws 1911, ch 172) for "irrigating or draining or irrigating and draining" the land of the incorporators. The 1911 Act was repealed and replaced in 1937 and the powers of such districts were broadened. The law now states:

> "Any number of landowners not less than three may incorporate themselves for the purpose of irrigating or draining their land or furnishing same with water for domestic use or protecting same by flood control or for any and all of such purposes * * *." (ORS 554.010.)

"The practical problem of unanimity in formation has limited the use of such districts, though there are now eighty-six of them, of which the largest number are organized for river bank protection." 45 Or L Rev 278, 282 (1966).

Except for ORS 554.010, the incorporators followed or copied the language of the statute in order to meet its basic requirements for the proposed articles of incorporation. They obeyed ORS 554.040(3), a subsection which contains the highly unusual requirement that "[t]he particular land to be improved" shall be legally described in the articles. They sought to meet the requirement of ORS 554.040(4) to include:

> "In general but clear language, the purpose and intent of the corporation, and describe in general language the proposed plan of improvement whether for one or more of the purposes named in ORS 554.010."

Accordingly, the first page of the articles of incorporation, under Article II, states:

"The improvement of said land shall be by:

"1. Drilling a water well or wells, providing a storage system for said water, and by providing also a distribution system for said water to all of the land mentioned above in attached 'Exhibit A' [*i.e.,* Sal La Sea II]. Included also is the maintenance and upkeep of said system."

It seems clear that the original corporate intent was to drill wells and to provide for storage and distribution of water, all on Sal La Sea II.

■■ ORS 554.050 sets up requirements for an improvement district which seeks to qualify as a nonprofit corporation. The section begins with the words: "If the corporation is not formed for the purpose of operating the business for profit either to the corporation *or its members* other than from the benefits to accrue from the improvements * * *." (Emphasis supplied.) The incorporators duly inserted into the articles of incorporation the language required by ORS 554.050. However, all of the activities of the plaintiff with respect to the control of water take place outside of the corporate acreage described in the articles of incorporation. ORS 554.300 provides opportunity for the amendment of articles to include new lands but it appears that no attempt has been made by the plaintiff to amend its articles for this purpose.

ORS 554.270(1) does give authority to the improvement district, "[w]henever the board of directors of the corporation shall by resolution determine that it is to the best interest of the corporation, * * * *for the works and improvement of the land described in the articles of incorporation* * * *" (emphasis supplied), to enter into contracts for the purchase of other waterworks or rights. However, as shown above, the plaintiff's purchases do not and presently cannot legally serve "the land described in the articles of incorporation."

[ 442 ]

■ In the matter of tax exemptions, Oregon traditionally has been a "strict construction" state. *Emanuel Lutheran Char. v. Dept. of Rev.,* 4 OTR 410, 415 (1971). Taxation is the rule, exemption the exception. The court concludes that the plaintiff's acts described herein are ineffective for obtaining exemption of its water systems in Roads End and Sal La Sea I. The several orders of the defendant, Nos. A&AU 77-40, A&AU 77-41 and A&AU 77-43, each dated July 15, 1977, are affirmed.

Costs are awarded to the defendant.